IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMES PANEPINTO and<br>WILLIAM HARGROVE,<br><br>         Plaintiffs,<br><br>v.<br><br>COMPRESSION SOLUTIONS, LLC, an<br>Oklahoma limited liability company, and<br>BSN, INC., a foreign corporation,<br><br>         Defendants. | Case No. 19-CV-259-JFH-SH |

## OPINION AND ORDER

This matter comes before the Court on the Motion to Dismiss Counts II, IV, V, VI, VII, and VIII of the Amended Complaint ("Motion") [Dkt. No. 10] and accompanying brief [Dkt. No. 11], filed by Defendants Compression Solutions, LLC ("CS"), and BSN, Inc.[1] ("BSN") (collectively "Defendants"). The case arises from employment contracts between CS and Plaintiffs James Panepinto and William Hargrove (collectively "Plaintiffs"), which included a partially commission-based compensation structure. Dkt. No. 6. For the reasons set forth below, the Court grants the Motion.

## BACKGROUND

Plaintiffs worked as medical sales representatives for CS's predecessor company until the company was sold to CS, a wholly owned subsidiary of BSN, in 2016. Dkt. No. 6 at ¶¶ 10-12. During the transition between companies, Plaintiffs executed "Vice President Agreements for

---

[1] The Amended Complaint names BSN as "BSN, Inc." Defendants state that BSN's correct legal name is "BSN Medical, Inc." Dkt. No. 11 at 9. BSN is hereby directed to file a Form CV-26 Notice of Party Name Correction, available at https://www.oknd.uscourts.gov/forms/civil, by July 10, 2024.

1

Regions" ("Agreements") with CS, which established Plaintiffs' compensation to be a combination of a base salary plus sales commissions calculated according to specific terms spelled out within the Agreements. *Id.* at ¶¶ 13-14. Both Plaintiffs' employment with CS ended by September 2017, apparently after intracompany tumult. *Id.* at ¶ 15.

Plaintiffs claim that Defendants wrongly withheld commission payments from them in a variety of ways after the end of their employment. *Id.* at ¶ 16. In particular, Plaintiffs claim: Defendants misapplied a claw-back provision in the Agreements; Defendants misreported the timing of sales; Defendants failed to credit Plaintiffs for "house accounts" within Plaintiffs' territories; and Defendants improperly reduced Plaintiff Panepinto's sales territory. *Id.* at ¶¶ 16-19. Based on these allegations, Plaintiffs bring eight causes of action: breach of contract against CS (Count I); breach of fiduciary duty against CS (Count II); unpaid wages against CS (Count III); negligence against BSN (Count IV); civil conspiracy against Defendants (Count V); unjust enrichment against Defendants (Count VI); intentional infliction of emotional distress against Defendants (Count VII); and punitive damages against Defendants (Count VIII). *Id.* at ¶¶ 20-62. Defendants' Motion seeks dismissal of six causes of action. Dkt. No. 10. Defendants do not seek dismissal of Count I or Count III. *Id.*

## STANDARD

In considering a motion under Rule 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* (citations

omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 562. Although decided within an antitrust context, *Twombly* stated the pleadings standard for all civil actions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the claimant. *Twombly*, 550 U.S. at 555; *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007); *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. *Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs,* 263 F.3d 1151, 1154–55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1109–10 (10th Cir. 1991).

## AUTHORITY AND ANALYSIS

**I.     Count II:  Breach of Fiduciary Duty against CS**

Plaintiffs allege that "CS was the only party with access to the payment information needed to calculate and determine the commissions earned by the Plaintiffs, and CS was responsible for determining and paying Plaintiffs' commissions timely and accurately." Dkt. No. 6 at ¶ 30. They further allege that they "were forced to rely" on CS to submit, collect, and report billings for which Plaintiffs were to be paid commissions, and that CS breached this reliance interest by wrongfully manipulating numbers to undercut Plaintiffs' commissions. *Id.* at ¶¶ 32-33.

A "[f]iduciary or confidential relationship has a broad meaning that includes legal, contractual, formal, and informal relations and exists when one person trusts and relies upon another." *Horton v. Hamilton*, 345 P.3d 357, 364 (Okla. 2015). In some cases, a fiduciary relationship "'is a conclusion of law; in others . . . it is a question of fact to be established by the

3

evidence." *Clark v. Clark*, 57 P.3d 95, 98 (Okla. Civ. App. 2002) (quoting *In re Estate of Beal*, 769 P.2d 150, 155 (Okla. 1989)). *See also Lowrance v. Patton*, 710 P.2d 108, 111-12 (Okla. 1985).

Defendants argue Plaintiffs' fiduciary duty claim fails as a matter of law because of "the near consensus view that an employer does not owe an employee any common law fiduciary duty." Dkt. No. 11 at 3 (quotation omitted). This argument fails to account for the commission-based structure of Plaintiffs' compensation, which forms the basis of Plaintiffs' alleged fiduciary relationship with CS. However, the Court finds one of Defendants' cited cases instructive. In *Driver v. Alliance Oncology, LLC*, the plaintiff (a physician) was to receive a quarterly commission on "all collected revenue" minus his base compensation from the defendant (his practice group). No. 15-CV-5008-SW-DGK, 2015 WL 4254392, at *2-3 (W.D. Mo. July 14, 2015). The plaintiff claimed that the defendant breached a fiduciary duty to him by wrongly withholding part of this commission. The court disagreed.

The *Driver* defendant billed patients directly for services performed by the plaintiff doctor. "Between the time the patients paid [the defendant practice group] and the time it paid [the plaintiff] quarterly, [the plaintiff] did not place any trust in [the practice group] to manage, control, or make any decisions about the money for his benefit." *Id.* at *2. Rather, the practice group's "only obligation . . . with respect to the money was to apply a contractual formula four times per year and then pay [the plaintiff] that amount." *Id.* at *3. The court reasoned that, "[b]y allegedly failing to pass along a percentage certain of [patient] payments, [the defendant] withheld its own money, not money it held in trust for [the plaintiff]." *Id.* Thus, the parties "had at most a debtor-creditor relationship, not a fiduciary relationship." *Id.* (citing *Shaner v. Sys. Integrators, Inc.*, 63 S.W.3d 675, 678 (Mo. Ct. App. 2001) ("[T]he contract of employment creates at most a debtor-

4

creditor relationship with respect to any commissions that may be owed by Employer to Employee."); *Bossaler v. Red Arrow Corp.*, 897 S.W.2d 629, 631 (Mo. Ct. App. 1995)).

So too here. Plaintiffs have not alleged that CS held funds in trust for them until they received their commissions. Instead, Plaintiffs allege their employment contracts set out a formula for commissions and CS manipulated that formula to underpay them.[2] Plaintiffs have plausibly pled at most a debtor-creditor relationship, not a fiduciary relationship. Dismissal is proper.

## II. Count IV: Negligence against BSN

Plaintiffs claim that CS's parent company, BSN, hired, trained, and supervised CS's managerial employees. Dkt. No. 6 at ¶¶ 44-47. Taking Plaintiffs' allegations as true, as the Court must at this stage, BSN's training and supervision were insufficient with the result that CS's employees failed to properly pay Plaintiffs' commissions and "were allowed to behave in a petty and punitive nature against former employees like the Plaintiffs." *Id.* at ¶ 47.

"[A] parent corporation is not ordinarily liable for the negligence of its independent subsidiary." *Grice v. CVR Energy, Inc.*, 921 F.3d 966, 970 (10th Cir. 2019). "As the Supreme Court has noted, '[i]t is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries.'" *Id.* (quoting *United States v. Bestfoods*, 524 U.S. 51, 61 (1998)) (modifications in original). To establish

---

[2] Plaintiffs argue *Driver* is distinguishable because "the *only* obligation the [*Driver*] defendant had was to pay the plaintiff a specific percent." Dkt. No. 18 at 15 n.4 (emphasis in original). They claim that here, "Plaintiffs relied on CS to properly collect monies for their benefit, and to properly report the collection of such monies for their benefit, and their Commission Pay was directly dependent on choices and judgments made by CS." *Id.* This is a distinction without a difference. In both cases, employment contracts set out commission structures. In both cases, employers collected accounts receivable and did not make financial information accessible to the plaintiffs. In both cases, employees depended on the employers to perform calculations for commissions and pay those commissions. And in both cases, employees alleged that the commissions were wrongfully withheld. Plaintiffs do not plead facts sufficient to distinguish their case from *Driver*.

5

liability of a parent company for its subsidiary's actions—regardless of whether a plaintiff seeks to pierce the corporate veil—a plaintiff "must prove a level of control beyond the ordinary involvement of a parent in the affairs of its subsidiaries." *Collier v. Flowserve Corp.*, No. 16-CV-304-GKF-FHM, 2017 WL 3033327, at *4 (N.D. Okla. July 17, 2017) (quotation omitted). "Ordinary involvement" includes monitoring a subsidiary's performance, supervising a subsidiary's finance and capital budget decisions, and articulating general policies and procedures, while "'eccentric'" activity by the parent company is activity "different from ordinary oversight 'in degree and detail.'" *Id.* (quoting *Bestfoods*, 524 U.S. at 72).

Plaintiffs plead no "eccentric" facts about BSN's management of CS. By their description, BSN wholly owned CS, "actively managed" CS, hired and trained CS's managerial employees, and failed to properly train and supervise those managerial employees. Dkt. No. 6 at ¶¶ 44-47. Plaintiffs describe no circumstances that would plausibly set apart BSN's activity as being different in degree and detail from a parent company's ordinary involvement in monitoring, supervising, and articulating general expectations of a subsidiary.

Plaintiffs claim in their Response [Dkt. No. 18 at 17-18] that they plead facts sufficient to pierce the corporate veil, that is, to demonstrate that CS is a "mere instrumentality" of BSN such that the legal distinction between the two entities may be disregarded and the companies may be treated as one entity for purposes of liability. *Gilbert v. Security Fin. Corp. of Okla., Inc.*, 152 P.3d 165, 175 (Okla. 2006), *abrogation on other grounds recognized by Montgomery v. Airbus Helicopters, Inc.*, 414 P.3d 824 (Okla. 2018). Veil piercing "hinges primarily on control." *Frazier v. Bryan Mem. Hosp. Auth.*, 775 P.2d 281, 288 (Okla. 1989) (emphasis omitted). To determine whether the requisite control exists, courts look to nonexclusive factors such as: common directors or officers between the two entities; gross undercapitalization of the subsidiary; reliance by the

subsidiary upon the parent for most or all of its business; portrayal by the parent of the subsidiary as a "division" or "department" of the parent; and failure to observe legal formalities between the two companies. *Id.* No facts exist in Plaintiffs' Amended Complaint regarding any of these control factors. Plaintiffs have not established a plausible negligence claim against BSN.

**III.     Count V:  Conspiracy against Defendants**

Plaintiffs next claim that CS and BSN conspired to limit or deny compensation to Plaintiffs through failure to pay commissions, claw backs and outright denials of commissions, and other acts and omissions. Dkt. No. 6 at ¶¶ 49-55.[3] The Amended Complaint lists a handful of CS employees who allegedly participated in the conspiracy. *Id.* The Amended Complaint also refers to "numerous overt acts" with unspecified details. *Id.*

The parties dispute whether affiliated corporations such as BSN and its wholly-owned subsidiary CS can be held liable for conspiring with each other. Federal district courts across the country also dispute this. *Compare Pizza Mgmt., Inc. v. Pizza Hut, Inc.*, 737 F. Supp. 1154, 1165-66 (D. Kan. 1990) (collecting cases) *with ASARCO LLC v. Americas Min. Corp.*, 382 B.R. 49, 78-79 (S.D. Tex. 2007) (collecting cases). The Court does not reach the issue, however, as Plaintiffs fail to plausibly plead sufficient facts or a tort underlying their civil conspiracy claim.

"To state a conspiracy claim, a plaintiff is required to 'allege specific facts showing agreement and concerted action.'" *Cox v. Koch*, No. 11-CV-0771-CVE-TLW, 2013 WL 6002225, at *8 (N.D. Okla. Nov. 12, 2013) (quoting *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994))

---

[3]  Several of these allegations are premised upon information and belief. *Id.* at ¶¶ 51, 53. Defendants argue, citing out of circuit authority, that the Court need not accept as true allegations premised upon information and belief. This does not reflect the approach of Oklahoma federal courts, which "in considering a motion to dismiss under Rule 12(b)(6) . . . accept[] as true all well-pled allegations in the complaint, including those based 'upon information and belief.'" *Higginbottom v. Mid-Del Sch. Dist.*, No. CIV-15-1091-D, 2016 WL 951691, at *1 (W.D. Okla. Mar. 9, 2016).

(dismissing civil conspiracy claim where plaintiff offered "only his own conclusory statements alleging conspiracy"). Plaintiffs rehash their labels and conclusions regarding CS's manipulation of commissions owed to them in their conspiracy allegations, but they fail to allege any specific facts showing agreement and concerted action between CS and BSN.

"A claim of civil conspiracy is not an independent, actionable claim; there must be an underlying tortious act." *Transportation All. Bank, Inc. v. Arrow Trucking Co.*, No. 10-CV-16-GKF-PJC, 2011 WL 221863, at *6 (N.D. Okla. Jan. 21, 2011); *Gaylord Entm't Co. v. Thompson*, 958 P.2d 128, 148 (Okla. 1998); *Brock v. Thompson*, 948 P.2d 279, 294 (Okla. 1997). Although "[e]very contract in Oklahoma contains an implied duty of good faith and fair dealing," generally "a breach of that duty merely results in damages for breach of contract, not independent tort liability." *Wathor v. Mutual Assur. Adm'rs Inc.*, 87 P.3d 559, 561 (Okla. 2004). Plaintiffs have not alleged or identified any underlying tortious acts beyond Defendants' allegedly wrongful behavior in performing the parties' contract, which Oklahoma law forecloses as a basis for conspiracy liability, and thus fail to plead a plausible conspiracy claim.

## IV. Count VI: Unjust Enrichment against Defendants

Plaintiffs claim that both CS and BSN were unjustly enriched by retaining money properly due to Plaintiffs as commissions under their employment contracts. To recover for unjust enrichment "there must be enrichment to another coupled with a resulting injustice." *Teel v. Public Serv. Co. of Okla.*, 767 P.2d 391, 398 (Okla. 1985) (superseded by statute on other grounds). Unjust enrichment is an equitable theory not ordinarily available where a plaintiff has an adequate remedy at law. *Harvell v. Goodyear Tire & Rubber Co.*, 164 P.3d 1028, 1035 (Okla. 2006).

It is a plaintiff's prerogative to plead alternative claims, such as simultaneous legal and equitable theories. *See Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1030 (10th Cir. 2007); *Sisemore v. Dolgencorp, LLC*, 212 F. Supp. 3d 1106, 1111 (N.D. Okla. 2016); *N.C. Corff*

*P'ship, Ltd. v. OXY USA, Inc.*, 929 P.2d 288, 295 (Okla. Civ. App. 1996). Where equitable unjust enrichment claims have been pled alternatively with legal theories not premised on an express contract, courts have allowed both claims to proceed. *See, e.g., Burlington*, 505 F.3d at 1030 (reversing dismissal of unjust enrichment claim and allowing it to proceed simultaneously with legal claims based on nuisance law and environmental statutes).

However, it is a "hornbook rule that quasi-contractual remedies . . . are not to be created when an enforceable express contract regulates the relations of the parties with respect to the disputed issue." *Member Servs. Life Ins. Co. v. Am. Nat. Bank & Tr. Co. of Sapulpa*, 130 F.3d 950, 957 (10th Cir. 1997). Thus, this Court has dismissed unjust enrichment claims where parties did not contest an express contract's validity or applicability. *See Sisemore*, 212 F. Supp. 3d at 1112 ("[T]he parties agree that Sisemore has alleged he and Dollar General have a contractual relationship . . . Sisemore is correct that a plaintiff may pursue inconsistent theories in a complaint, but Sisemore alleges no facts supporting his alternative theory that he had a quasi-contractual relationship with Dollar General."); *Horton v. Bank of Am., N.A.*, 189 F. Supp. 3d 1286, 1290 (N.D. Okla. 2016) ("The Hortons contest neither the validity of the parties' [] contract nor the applicability of that contract . . . [and] merely contend that BANA collected more money . . . than it was contractually entitled. Plaintiffs can fully recover any such improperly collected funds via a claim for breach of contract."); *accord Bradshaw v. Uber Tech., Inc.*, No. CIV-16-366-R, 2017 WL 2455151, at *6 (W.D. Okla. June 6, 2017).

The parties here do not contest the applicability of an express contract. Quite the contrary: CS has not moved to dismiss Plaintiffs' breach of contract claim. Because neither the validity nor the applicability of the parties' express contract is at issue, Plaintiffs have an adequate remedy at law and an unjust enrichment theory is not available to them.

V.     **Count VII:  Intentional Infliction of Emotional Distress against Defendants**

Plaintiffs claim that "Defendants acted intentionally in an extreme and outrageous manner when they conspired to withhold and deny Plaintiffs over seventy-five thousand dollars ($75,000.00) in earned wages." Dkt. No. 6 at ¶ 60.  According to Plaintiffs, "Defendants' actions caused the Plaintiffs severe emotional distress." *Id.*

A claim for intentional infliction of emotional distress is "governed by [] narrow standards" and "requires evidence of extreme and outrageous conduct coupled with severe emotional distress." *Computer Pubs. v. Welton*, 49 P.3d 732, 735 (Okla. 2002).  "The tort of outrage protects emotional tranquility *against serious invasion only. Extraordinary* transgression of the bounds of civility is required." *Eddy v. Brown*, 715 P.2d 74, 77 n.6 (Okla. 1986) (emphasis in original).  The Court has the "responsibility initially to act as gatekeeper:  to determine whether the defendant's conduct may reasonably be regarded as sufficiently extreme and outrageous." *Miller v. Miller*, 956 P.2d 887, 901 (Okla. 1998).  This requires the Court evaluate whether Plaintiffs have pled facts plausible to support a conclusion that:  (1) "the defendant's conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and that such conduct is regarded as atrocious and utterly intolerable in a civilized community" and (2) "the emotional distress suffered by the plaintiff[s] was so severe that no reasonable person could be expected to endure it." *Computer Pubs.*, 49 P.3d at 735-36 (quotation omitted).

Plaintiffs plead no facts demonstrating an extraordinary transgression of the bounds of civility.  Their conclusory allegations that Defendants acted outrageously and caused them extreme distress have no supporting details to establish plausibility.  Moreover, their Response brief arguments that Defendants "conspire[d] to wrongfully deny them the *significant* sums of money to which they were clearly entitled" and that Defendants' behavior was "certainly extreme and outrageous, due in no small part to the amount of money at issue and how clearly Plaintiffs were

entitled to those funds" are not adequately supported by facts alleged in the Amended Complaint. Dkt. No. 18 at 25 (emphasis in original). Dismissal is proper.

### VI.     Count VIII: Punitive Damages against Defendants

Although Plaintiffs label their request for punitive damages as a distinct count within their Amended Complaint [Dkt. No. 6 at 8], they concede in their Response that "[a] plea for punitive damages is generally considered to be an element of recovery of the underlying cause of action; it does not constitute a separate cause of action." *Rodebush v. Okla. Nursing Homes, Ltd.*, 867 P.2d 1241, 1247 (Okla. 1993). In Oklahoma, punitive damages are only available in "an action for the breach of an obligation not arising from contract." 23 O.S. § 9.1. Punitive damages are not available in a contract case, as "[t]he detriment caused by the breach of an obligation to pay money only is deemed to be the amount due by the terms of the obligation" with interest. 23 O.S. § 22.

Plaintiffs' only remaining claims are Count I against CS for breach of contract and Count III against CS for unpaid wages in violation of the Oklahoma Protection of Labor Act ("OPLA"), 40 O.S. § 165.3(A). The parties dispute whether punitive damages are available under the OPLA. The Court does not find it necessary to resolve this dispute at this time, as the matter of whether to instruct a jury regarding punitive damages is to be resolved only after presentation of evidence at trial. *See Estrada v. Port City Props., Inc.*, 259 P.3d 495, 503 (Okla. 2011); *Vance v. Enogex Gas Gathering, L.L.C.*, 393 P.3d 718, 722 (Okla. Civ. App. 2016). That said, Defendants are correct that the Court has authority under Rule 12(f) of the Federal Rules of Civil Procedure to strike "any redundant[ or] immaterial" matter from any pleading. As discussed, Plaintiffs' so-called "Count VIII" for punitive damages is not an independent cause of action. Thus, the Court will strike the heading "Count VIII" and paragraphs 61 and 62 of the Amended Complaint. The "WHEREFORE" paragraph following paragraph 62, which includes a prayer for punitive damages, shall remain as pled.

## CONCLUSION

IT IS THEREFORE ORDERED that the Motion to Dismiss Counts II, IV, V, VI, VII, and VIII of the Amended Complaint filed by Defendants [Dkt. No. 10] is GRANTED.

IT IS FURTHER ORDERED that the heading "COUNT VIII. PUNITIVE DAMAGES AS TO BOTH DEFENDANTS" and paragraphs 61 and 62 of the Amended Complaint [Dkt. No. 6] are hereby STRICKEN.

Dated this 26th day of June 2024.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE